232

TITUSVILLE DAIRY PRODUCTS CO. v.
ANDERSON, U. S. Secretary of
Agriculture.

Civil Action No. 6660.

District Court, W. D. Pennsylvania.

May 3, 1948.

Daniels, Harter & Swope, of Harrisburg, Pa., for plaintiff.

J. Stephen Doyle, Sp. Asst. to Atty. Gen., J. C. Krause, of Washington, D. C., and Owen M. Burns, U. S. Attorney, of Pittsburgh, Pa., for defendant.

McVICAR, District Judge.

This action is before the Court on the complaint of the Titusville Dairy Products Company, the answer of the Secretary of Agriculture of the United States and the record in the proceedings before the Secretary of Agriculture. No evidence was taken in this Court.

Complaint.

In the complaint, is is averred that plaintiff brings this action pursuant to the provisions of subsection (15) (B) of Section 8c of the Agricultural Adjustment Act of 1933, as amended, and reenacted and amended by the Agricultural Marketing Agreement Act of 1937, 7 U.S.C.A., § 601 et seq.

The complaint contains the following prayers:

That this Court issue an order commanding the Secretary of Agriculture to relieve plaintiff of all obligations under Order No. 27 prior to October 5, 1941, with respect to such milk as was produced, received, sold and consumed in Pennsylvania.

That this Court hold that plaintiff was not subject to the provisions of Order No. 27 after October 5, 1941.

That this Court find that Order No. 27 is illegal and unconstitutional in that it provides for an unconstitutional delegation of authority by the Secretary of Agriculture to local health authorities to determine what handlers were subject to Order No. 27.

That this Court hold that the Agricultural Marketing Agreement Act of 1937 is unconstitutional and illegal in so far as it permits the said delegation of authority by the Secretary of Agriculture to local health authorities, And

That this Court hold that the milk of plaintiff as was produced in Pennsylvania, received at its Titusville, Pennsylvania, plant and was sold and consumed in Pennsylvania was not in interstate commerce nor did it directly burden, obstruct or affect interstate commerce.

The complaint also contains the following averments:

(3) That on August 6, 1944, the defendant filed in the name of the United States of America, an amended complaint charging plaintiff herein with being a handler under Order No. 27 and with having failed to pay to its producers during the period of July, 1941, through January 1942 the sum of $17,021.65 in violation of Section 927.27 of said Order No. 27; with having failed to pay $625.84 to the Administration Assessment Fund Account during the period of May, 1941, through January, 1942, in violation of Section 927.8 of said Order and with having failed to pay to the Producer Settlement Fund Account the sum of $4,058.55 in violation of Section 927.7(g) (h) of said Order No. 27.

(4) That plaintiff filed an answer denying that it was a handler under Order No. 27 and that it was indebted under said Order in the amount set forth in the

amended bill of complaint or in any amount, and upon request, this Court granted a stay of all proceedings until such time as the matters at issue be terminated in proceedings provided for under the Agricultural Marketing Agreement Act, 7 U.S.C.A. § 608c(15) (A).

(5) That on October 27, 1945, plaintiff instituted proceedings before defendant under Section 608c(15) (A) of the Agricultural Marketing Agreement Act requesting an order by which it would be held subject to Order No. 27 only for so long as and for such products as it actually shipped to the New York Metropolitan Milk Marketing Area, in which proceeding it asserted the following:

(a) That it shipped no products into the New York Metropolitan Milk Marketing Area after October 5, 1941, and was not subject to any of the obligations of Order No. 27 thereafter.

(b) That prior to October 5, 1941, it was subject to Order No. 27 only with respect to those products which it received at its Titusville, Pennsylvania, plant and shipped to the New York Metropolitan Milk Marketing Area.

(c) That all the milk which it handled prior to October 5, 1941, was produced in Pennsylvania by Pennsylvania producers, was received at its Titusville, Pennsylvania, plant and was sold within the confines of Pennsylvania for consumption in Pennsylvania, except a small amount of milk converted into cream which was shipped into the New York Metropolitan Milk Marketing Area.

(d) That after October 5, 1941, all of the milk received at its Titusville, Pennsylvania, plant was produced in Pennsylvania by Pennsylvania producers and was sold in Pennsylvania for consumption in Pennsylvania, and no milk, cream or milk products were shipped into the New York Metropolitan Milk Marketing Area.

(e) That prior to October 5, 1941, Order No. 27 had application, if at all, only to such milk or milk products as actually were shipped into the New York Metropolitan Marketing Area, as to which, plaintiff complied with Order No. 27.

(f) That after October 5, 1941, Order No. 27 had no application whatsoever to any milk or milk products received at the Titusville, Pennsylvania, plant.

(g) That prior to October 5, 1941, only such milk as was actually shipped into interstate commerce was subject to Order No. 27 and that milk produced in Pennsylvania, received in Pennsylvania and sold in Pennsylvania for consumption in Pennsylvania was not in interstate commerce nor did it directly burden, obstruct or affect interstate commerce, nor was it in the current of interstate commerce.

(h) That after October 5, 1941, no milk or milk products were shipped in interstate commerce and none of the milk produced in Pennsylvania, received at plaintiff's Titusville, Pennsylvania plant, sold in Pennsylvania for consumption in Pennsylvania, moved in interstate commerce nor did it directly burden, obstruct or affect interstate commerce, nor was any of the milk in the current of interstate commerce.

### Finding of Fact.

In the proceeding before the Secretary of Agriculture, he made the following Finding of Fact:

"1. Petition is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its place of business at Titusville, Pennsylvania.

"2. Petitioner, during the period from September 1, 1938, to January 16, 1942, was engaged in the business of receiving, processing, and distributing milk received from producers located in the Commonwealth of Pennsylvania.

"3. During the period September 1, 1938 to January 16, 1942, petitioner's plant was approved by the New York City Health Department as a plant from which milk was eligible to be shipped into the city of New York for distribution and consumption.

"4. During the same period, all milk received by petitioner at its plant was received from producers whose milk had been approved by the New York City Health Department as eligible for shipment into the City of New York for distribution and consumption.

234

"5. On September 1, 1938, Order No. 27, regulating the handling of milk in the New York metropolitan marketing area, became effective. It defined a "handler" as "any person who engages in the handling of milk, or cream therefrom, which was received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area, which handling is in the current of interstate commerce. * * * This definition shall not be deemed to include any person who neither received milk from producers nor handles milk which is sold as milk or cream in the marketing area."

"6. By an amendment effective May 1, 1940, the last sentence in the definition of handler set out above was deleted. No further substantial change was made in the definition during the period involved in this proceeding.

"7. During the time when the order was in effect from September 1, 1938, to April 30, 1941, petitioner shipped substantial quantities of cream into the New York metropolitan marketing area, made the reports required by the order, and received payments amounting to $55,213.85 from the producer-settlement fund established under the order.

"8. In May and June 1941, petitioner shipped cream into the area, made its reports, and paid into the producer-settlement fund the amount of $6,665.59. During this period the milk equivalent of the cream shipped by petitioner into the area amounted, in May, 1941, to 32.65 percent, and in June 1941 to 32.87 percent, of petitioner's total receipts of milk at its Titusville plant.

"9. Thereafter the milk equivalent of the cream shipped by petitioner into the marketing area constituted the following percentages of the milk received at its Titusville plant:

| | | |
|---|---|---|
| July 1941 | — | 27.70 percent |
| August 1941 | — | 16.68 percent |
| September 1941 | — | 20.74 percent |
| October 1941 | — | 3.43 percent |

"Petitioner shipped no milk or cream into the marketing area after October 5, 1941.

"10. From July 1, 1941, until January 16, 1942, petitioner made the reports to the market administrator required by Order No. 27, but did not pay any sums into, or receive any sums from, the producer-settlement fund. During that period its reports indicated that it owed money to that fund.

"11. Petitioner did not segregate the milk of those producers, the cream from whose milk was shipped into the marketing area, from the milk of other producers which was received at its plant.

"12. By letter dated November 22, 1941, petitioner inquired of the market administrator as to the procedure for withdrawing from the marketing pool and was informed by letter dated November 25, 1941 that the procedure was to relinquish the health approval of its plant by the New York City Board of Health.

"13. On January 16, 1942, the approval of petitioner's plant by the New York City Health Department was terminated at the request of petitioner.

"14. Order No. 27 as originally issued and effective September 1, 1938, was preceded by numerous hearings and there is substantial evidence in the record of those hearings supporting the definition of 'handler.' As originally issued and effective, fluid milk sold outside the marketing area and fluid cream (with certain exceptions not pertinent) sold outside the marketing area were unpriced although milk products so sold were priced in the lower classifications. Effective May 1, 1940, and on the basis of substantial evidence in the promulgation record, the order was changed so that all milk received at a 'handler's' plant was thereafter priced and pooled except Class I milk which was not sold in the marketing area and Class I milk which did not pass through a plant in the marketing area. Effective March 1, 1941, the order was amended, on the basis of substantial evidence in the promulgation record, so that thereafter all milk received at a 'handler's' plant was priced and pooled under the order."

Order.

The Secretary of Agriculture, by his Judicial Officer, made the following order on the above petition:

"In view of the foregiong, the relief requested by the petition is denied and the petition is dismissed."

This proceeding is under Section 8c(15)(A) of the Agricultural Adjustment Act of 1933, as amended and as reenacted and amended by the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C.A. § 601 et seq. The questions involved Order No. 27, as amended, regulating the handling of milk in the New York Metropolitan Marketing Area.

The order made against the plaintiff was on the basis that it was a handler of milk.

Order No. 27 of the Secretary of Agriculture, Sec. 927.1, contains the following definitions:

"(c) 'New York metropolitan milk marketing area' means the city of New York, the counties of Nassau, Suffolk (except Fisher's Island), and Westchester, all in the State of New York, and is hereinafter called the 'marketing area.'

"(e) 'Producer' means any person who produces milk which is delivered to a handler at a plant which is approved by any health authority for the receiving of milk to be sold in the marketing area.

"(f) 'Handler' means any person who engages in the handling of milk, or cream therefrom which was received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area, which handling is in the current of interstate commerce or directly burdens, obstructs, or affects interstate commerce. This definition shall be deemed to include a cooperative association of producers with respect to any milk received from producers at any plant operated by such association or with respect to any milk which it causes to be delivered from producers to any other handler for the account of such association and for which such association collects payment."

Plaintiff was not a handler after October 5, 1941, because it shipped no milk or cream into the marketing area after that date. All milk and cream which it handled after that date was produced, sold and consumed in Pennsylvania. Plaintiff was not engaged, after October 5, 1941, in the handling of milk or cream therefrom, which was received at a plant approved by any health authority for the receiving of milk to be sold in the marketing area.

Prior to October 5, 1941, petitioner was a handler because it was engaged in the handling of milk or cream therefrom, which was received at a plant approved by a health authority for the receiving of milk to be sold in the New York Metropolitan Marketing Area, which was handled in the current of interstate commerce, or directly burdens, obstructs or affects interstate commerce. United States v. Rock Royal Co-operative, Inc., et al., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; H. P. Hood & Sons, Inc., et al. v. United States et al., 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478; United States v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726.

The ruling of the Secretary of Agriculture is in accordance with the law in so far as it relates to all milk and cream produced, and sold by plaintiff on or prior to October 5, 1941. The ruling is not in accordance with the law as to milk or cream sold after October 5, 1941.

The constitutional and other questions raised by both plaintiff and defendant have been considered.

The proceeding should be remanded to the Secretary of Agriculture with direction to rule in accordance with the law as stated above.